MARY'S OPINION HEADING 







                                                                                    NO. 12-03-00366-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
JERRY SPRINGSTEEN,                                   §                 APPEAL FROM THE 159TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 ANGELINA COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant Jerry Springsteen was found guilty of retaliation and sentenced to ten years of
imprisonment. In two issues, Appellant challenges the legal sufficiency of the evidence and asserts
that the trial court violated his Sixth Amendment right to confront and cross-examine the victim. 
We reverse and render.
 
Background
            Appellant was charged by indictment with the offense of retaliation in violation of section
36.06(a)(1) of the Texas Penal Code. The indictment charged Appellant with intentionally or
knowingly threatening Bridgett Hatch by the unlawful act of stating that he would bomb her house,
which was in retaliation for her report of a crime. He pleaded “not guilty,” waived his right to trial
by jury, and tried his case before the trial court.
            According to the evidence at trial, Appellant called Hatch and asked her to pick him up after
his release from Rusk State Hospital. Hatch met Appellant at the hospital while she was also there
as a patient. Hatch agreed to pick up Appellant, who informed her that he had no place to stay. 
Hatch agreed to let him stay at her home. On the way to Hatch’s home from the hospital, Appellant
asked if they could stop to get some beer and whiskey, which Hatch agreed to do. Upon their arrival
at Hatch’s home, Appellant began drinking and acting violently. He burned a jacket in Hatch’s
fireplace, which caused her home to fill with black smoke. He also kicked the fireplace insert,
breaking it. This conduct caused Hatch to become fearful of Appellant. However, Appellant stayed
the night because, according to Hatch’s testimony, she thought he might hit her if she threw him out.
            The next morning, Hatch went to a car dealership in Lufkin to buy a new car. She took
Appellant with her to get him out of her house. Appellant had been drinking prior to their arrival at
the dealership. Once they arrived, Appellant became belligerent and made racial slurs toward the
salesman. Hatch asked Appellant to leave the dealership because of his unacceptable behavior. She
had given Appellant a key to her house and knew he would go there when he left the dealership. She
communicated to the salesman that she was afraid to go home because she knew Appellant would
be there. The salesman then called the Angelina County Sheriff’s Office and described the situation. 
Two deputies were dispatched in response to the salesman’s call. Hatch met the deputies down the
road from her house and told them that she was afraid of Appellant and wanted him out of her house.
            The deputies then went to Hatch’s home and spoke to Appellant, informing him that he
needed to leave. They also offered to give him a ride to a local motel. Once outside the house,
Appellant became belligerent. One of the officers, Deputy Larry Hight, testified that, due to
Appellant’s intoxication, he was a danger to himself and Hatch and that they arrested him for public
intoxication. After this incident, Appellant continued to communicate with Hatch by mail and
telephone. She testified that he threatened her because of the incident at her house. Appellant left
a message on Hatch’s answering machine threatening to bomb her house because she “had him
hauled away” and “because he was arrested.” The deputies also retrieved recordings and letters from
Appellant to Hatch that documented the threats made by Appellant.
            The court found Appellant guilty of retaliation and sentenced him to ten years of
imprisonment. This appeal followed.
 
Sufficiency of the Evidence
            In his first issue, Appellant challenges the legal sufficiency of the evidence to support the
jury’s verdict. 
Standard of Review
            In reviewing a legal sufficiency challenge, the appellate court examines the evidence in the
light most favorable to the verdict to determine whether a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Johnson v. State, 871 S.W.2d 183, 186
(Tex. Crim. App. 1993) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.
Ed. 2d 560 (1979)). The trier of fact, here the trial court, is the exclusive judge of (1) the facts, (2)
the credibility of the witnesses, and (3) the weight to be given to the testimony of each witness. 
Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). The fact finder may reject all
or any part of a witness’s testimony, id., and is entitled to draw reasonable inferences from the
evidence. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex. App.–Corpus Christi 1988, pet. ref’d). 
            The legal sufficiency of the evidence is a question of law. McCoy v. State, 932 S.W.2d 720,
724 (Tex. App.–Fort Worth 1996, pet. ref’d). The issue on appeal is not whether we as a court
believe the State’s evidence or believe that the defense’s evidence outweighs the State’s evidence. 
See Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). Our duty is not to reweigh the
evidence from reading a cold record, but to act as a due process safeguard ensuring only the
rationality of the fact finder. Williams v. State, 937 S.W.2d 479, 483 (Tex. Crim. App. 1996). The
verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable
doubt. Matson, 819 S.W.2d at 846. If we conclude that the evidence is legally insufficient to
support the verdict, we must render a judgment of acquittal. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982). 
Applicable Law and Analysis
            A person commits an offense if he intentionally or knowingly harms or threatens to harm
another by an unlawful act in retaliation for or on account of the service or status of another as a
person who has reported or who the actor knows intends to report the occurrence of a crime. Tex.
Pen. Code Ann. § 36.06(a)(1)(B) (Vernon Supp. 2004-2005).


 The State contends on appeal, as it
did at trial, that Hatch had reported Appellant’s commission of criminal trespass. A person commits
criminal trespass if he enters or remains on property of another without effective consent and he had
notice that the entry was forbidden. Tex. Pen. Code Ann. § 30.05(a) (Vernon Supp. 2004–2005). 
“Consent” means assent in fact, whether express or apparent. Tex. Pen. Code Ann. § 1.07(11)
(Vernon Supp. 2004–2005). “Notice” is an oral or written communication by the owner or someone
with apparent authority to act for the owner. Tex. Pen. Code Ann. § 30.05(a)(2)(A) (Vernon Supp.
2004–2005).  
            Appellant points out that an appellate court should uphold the jury’s verdict “unless it is
found to be irrational or unsupported by more than a mere modicum of evidence.” See Moreno v.
State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). He then asserts that the verdict in this case is
insupportable for two reasons. First, he states that there is no evidence that the deputies who went
to Hatch’s home were advised that any offense had been committed. Consequently, Appellant
contends, the deputies had not planned to arrest him for anything and did not do so until he became
belligerent. Second, Appellant argues that a rational trier of fact could not find beyond a reasonable
doubt that Hatch was a person who reported a crime, which is a necessary element of retaliation. 
            The evidence shows that Appellant accompanied Hatch to a car dealership in Lufkin. Hatch
asked Appellant to leave the dealership because of his unacceptable behavior. After Appellant left,
Hatch told the salesman she was afraid to go home because she knew Appellant would be there. The
salesman then called the Angelina County Sheriff’s Office and described the situation. Deputy Hight 
described the nature of the salesman’s call very simply, stating that “I was called to the residence on
Roper Road belonging to Ms. Hatch. Bridgett Hatch. Mr. Springsteen was there. He was
intoxicated. She wanted him out of the house.” The evidence is undisputed that Hatch did not make
the call. 
            Hatch met the deputies down the road from her house and told them that she was afraid of
Appellant and wanted him out of her house. Deputy Larry Hight testified that he spoke with Hatch
to verify that she did not want Appellant at her home. Hatch also told the deputies that she “couldn’t
get [Appellant] to leave.” The deputies then went to Hatch’s home and spoke to Appellant,
informing him that he needed to leave. According to Hight’s testimony, they even offered him a ride
to a local motel to peacefully resolve the situation. Once Appellant was outside the residence, he
became belligerent and uncooperative with the deputies and was arrested for public intoxication. 
This evidence establishes the first two elements of criminal trespass: that Appellant entered the
property of another (Hatch) and that Hatch did not consent for Appellant to remain on her property. 
The third element, notice to Appellant, is problematic.
            During cross examination, Hatch testified as follows:
 
[APPELLANT’S COUNSEL]:Did you report the occurrence of a crime or did I understand your
testimony to be that the people at the car dealership are the ones
that called the officer?
 
HATCH: I told them I was scared to go home and to call the officers.
 
 
            The call from the car salesman to the sheriff’s office reported only that Appellant was on
Hatch’s property and that Hatch was afraid of him and wanted him to leave. The evidence does not
show, or support an inference, that at the time of the call, Appellant had notice that Hatch wanted
him off her property. In fact, Hatch testified that she had given Appellant a key to her house. Thus,
Appellant had no reason to believe that he no longer had permission to be at Hatch’s house. 
Therefore, the salesman’s call to the sheriff’s office was not a report of criminal trespass. 
            When the sheriff’s deputies met with Hatch, she told them that she “couldn’t get [Appellant]
to leave.” However, the evidence does not support an inference that, between the time Hatch left the
dealership and the time she met the sheriff’s deputies, she told Appellant to leave her property. 
Consequently, Hatch’s comment that she “couldn’t get [Appellant] to leave” cannot be considered
a report of criminal trespass.
            The State asserts that the deputies gave Appellant the required notice once they confronted
Appellant and that once the notice was given to him, he refused to leave. The State also
acknowledges, at least implicitly, that the crime of criminal trespass was complete only after
Appellant refused to leave Hatch’s property. Nonetheless, the State’s argument seems to be that (1)
Hatch had summoned the sheriff’s deputies to her property because of Appellant’s objectionable
behavior, (2) she had informed the sheriff’s deputies that she wanted Appellant off her property, (3)
she was in the presence of the sheriff’s deputies at the time Appellant refused to comply with their
directive to leave Hatch’s property, and (4) therefore she can be considered to have reported the
crime at that time. The State cites no authority to support its argument, and we are not aware of any. 
Therefore, we reject the State’s contention that a report of a crime can occur in this manner. 
            Based upon our review of the record, we hold that the State did not prove beyond a
reasonable doubt that Hatch was a person who reported a crime. Consequently, the evidence is
legally insufficient to support the trial court’s judgment of conviction. Accordingly, we reverse the
judgment of the trial court and render a judgment of acquittal.
 
Disposition
            The judgment of the trial court is reversed, and we render a judgment of acquittal.
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
 
Opinion delivered February 23, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
(DO NOT PUBLISH)